Richard de Bodo (State Bar No. 128199)
J. Drew Diamond (State Bar No. 205028)
David G. Chang (State Bar No. 241923)
HOGAN & HARTSON LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
E-mail: rdebodo@hhlaw.com
         ddiamond@hhlaw.com
         dgchang@hhlaw.com

Attorneys for Plaintiff VALEANT
PHARMACEUTICALS INTERNATIONAL

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| VALEANT PHARMACEUTICALS INTERNATIONAL<br><br>Plaintiff<br>        v.<br><br>MICHAEL O. LEAVITT, *in his official capacity as Secretary of the U.S. Department of Health and Human Services;* ANDREW C. VON ESCHENBACH, M.D., *in his official capacity as Commissioner of the Food and Drug Administration,*<br><br>Defendants,<br><br>and<br><br>SPEAR PHARMACEUTICALS, INC.,<br><br>Defendant-Intervenor. | Case No. SACV 08-0049 AG (AGRx)<br><br>**VALEANT'S OPPOSITION TO SPEAR'S MOTION FOR EXECUTION ON BOND**<br><br>**FILED UNDER SEAL**<br><br>*REDACTED VERSION* |

\\\LA - 086689/000040 - 395428 v1

| | |
|---|---|
| 1 | **I.    Introduction** |
| 2 | Even though the TRO in this case was in place for a mere 18 days, Spear's |
| 3 | Motion for Execution of the Bond seeks to recover lost revenues for a period of |
| 4 | <u>more than 45 days</u>.  And, with respect to the 18 days the TRO was in effect, Spear's |
| 5 | requested recovery is defective both factually and legally.  First, Spear's motion is |
| 6 | premature as a matter of law.  Parties can only recover on bonds upon showing they |
| 7 | "had the right all along to do what it was enjoined from doing."  *Nintendo of* |
| 8 | *America, Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036 (9th Cir. 1994).  Spear |
| 9 | cannot possibly make this showing because there has not yet been a final |
| 10 | determination on the merits in its favor.  Indeed, in every case relied on by Spear, |
| 11 | the moving party waited until <u>after</u> the underlying claims were resolved.  Only if |
| 12 | Spear wins on summary judgment or at trial, may it bring this motion.  Not before. |
| 13 | Second, Spear's purported damages are misleading and speculative.  Spear |
| 14 | contends it suffered approximately $1 million in damages as a direct result of the |
| 15 | TRO.  But its own computer records show that [REDACTED] of its supposed lost |
| 16 | sales occurred not during the TRO period, but during the previous 30 days during |
| 17 | which time Spear invoked a voluntary suspension of sale, followed by an FDA- |
| 18 | mandated suspension of sales.  Moreover, the evidence Spear proffers with respect |
| 19 | to the 18-day period the TRO was in effect is inadmissible, speculative, conclusory, |
| 20 | incomplete, and conflicts with market data from the same time period. |
| 21 | Third, Spear is not a legitimate beneficiary of the surety bond posted by |
| 22 | Valeant.  Valeant brought its action against the FDA, not Spear.  Valeant sought a |
| 23 | TRO against the FDA, not Spear.  The TRO issued by the Court did not directly |
| 24 | restrain Spear from doing anything; the order only was directed against the FDA. |
| 25 | Therefore, Spear may not execute on the bond. |
| 26 | Accordingly, for all of these reasons, Valeant respectfully requests that the |
| 27 | Court deny Spear's motion. |
| 28 | |

## II. Spear's Motion Is Premature Because Spear Cannot Establish It Was "Wrongfully Restrained" Until a Final Judgment Has Been Entered

As Spear points out in its opening brief, Federal Rule 65(c) specifies that the Court may only order payment on an injunction bond if a party has been "wrongfully enjoined or restrained." In *Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036 (9th Cir. 1994), the Ninth Circuit held that "a party has been wrongfully enjoined within the meaning of Rule 65(c) when it turns out the party enjoined had the right all along to do what it was enjoined from doing." (Spear's Memo. at 2.) The party seeking to enforce the bond must have "<u>prevailed in the underlying litigation</u>." *Id.* at 1037 (emphasis added). Here, Spear argues it "was wrongfully restrained because Spear prevailed in the preliminary injunction proceeding." (Spear's Memo. at 2.) But this Court's denial of Valeant's motion for a preliminary injunction does not equate to a finding that Spear ultimately "prevailed in the underlying litigation" or "had the right all along to do what it was enjoined from doing."

It is well settled that a defendant can only be found to have been "wrongfully enjoined or restrained" once there has been a final determination on the merits in favor of the enjoined party. *Nintendo*, 16 F.3d at, 1036, 1037.[1] In *Nintendo*, the authority upon which Spear principally relies, the defendant did not seek to execute on the preliminary injunction bond <u>until after it had prevailed at trial</u> and the Ninth Circuit had affirmed the trial court judgment. *Id.*; *see also Dass v. Tosco Corp.*, 2008 WL 2127938 (9th Cir., May 20, 2008) (affirming execution of injunction bond

---

[1] *See also*, *Network Int'l L.C. v. Worldcom Techs., Inc.*, 133 F. Supp. 2d 713 (D. Md. 2001) (applying Maryland law, court held it would wait until conclusion of proceedings before ruling on defendant's recovery against TRO bond, where defendant sought to execute after TRO was dissolved upon removal of action from state to federal court); *Am. Bible Soc. v. Blount*, 446 F.2d 588, 594 (3d Cir. 1971) (where party sought to execute on bond after court dismissed claims on ground that settlement rendered them moot, court held no liability can arise on injunction bond unless there is a final judgment in favor of party enjoined; *Meeker v. Stuart*, 188 F. Supp. 272, 276 (D.D.C. 1960) ("[T]here can be no recovery of damages caused by a preliminary injunction, even if the injunction is set aside, unless final judgment after trial is in favor of the party that has been enjoined.").

after Ninth Circuit affirmed district court's grant of summary judgment); *U.S. v. Guess*, 390 F. Supp. 3d 979, 983 (S.D. Cal. 2005) (defendant moved to execute TRO bond after plaintiff dismissed case in its entirety).

Indeed, all the authority Spear cites in its motion recognizes this rule:

- In *Sionix Corp. v. Moorehead*, 299 F. Supp. 2d 1082, 1085 (S.D. Cal. 2003) (cited by Spear at page 2 of its memorandum), the defendant moved to execute on a bond arising from a preliminary injunction order only after claims against him were dismissed, and even then the motion was stayed pending conclusion of appeals to the Ninth Circuit by other defendants who also had a potential claim on the bond.
- In *Nat'l Kidney Patients Ass'n v. Sullivan*, 958 F.2d 1127, 1134 (D.C. Cir. 1992) (cited by Spear at pages 2-3 of its memorandum), the court found that the defendant was entitled to execute on a bond based on a holding that the district court lacked jurisdiction over the underlying matter and therefore lacked jurisdiction to issue the preliminary injunction.
- In *Coyne-Delaney Co., Inc. v. Capital Development Bd. of the State of Illinois*, 717 F.2d 385, 389 (7th Cir. 1983) (cited by Spear at page 3 of its memorandum), the defendant moved to execute on a bond only after the appeals court determined the plaintiff could not assert the cause of action that had been the basis for the preliminary injunction in district court.

Under this established and consistent case law, Spear's motion is premature. If Valeant prevails on summary judgment or at trial, then Spear will not be able to argue it "had the right all along to do what it was enjoined from doing." Accordingly, because Valeant's claims have not been finally adjudicated, the Court should deny Spear's motion.

In addition to being premature, Spear's motion fails to comply with Local Rule 65-8 which sets forth the specific procedures for enforcing a bond.

### III. Spear's Motion Seeks to Recover Lost Sales that Occurred Before the TRO Ever Went Into Effect

It is undisputed that the TRO at issue went into effect on May 31, 2008 and was extinguished on June 18, 2008. It lasted 18 days. But Spear is now trying to recover for supposed lost sales that occurred during the preceding 30 days – a time period during which Spear <u>voluntarily</u> ceased selling its product or ceased selling its products at the instruction of the FDA – not during the time the TRO was in effect.

Valeant filed this lawsuit and its TRO application on April 25, 2008. On April 30, 2008, the FDA – not Valeant – asked this Court to stay the TRO proceedings for two weeks so it could resolve "newly-discovered matters pertaining to the administrative record." (4/30/08 Stay Application at 1.) The FDA further represented that Spear had agreed to "suspend[] further sales and shipment of its generic fluorouracil cream, and will continue to do so until noon (EDT) on May 14, 2008." (4/30/08 Stay Application at 3.) In a May 1, 2008 submission, Spear reaffirmed that its "letter to the FDA makes a commitment that Spear will not make further sales or shipments of the ANDA Product" during the stay. (5/1/08 Spear Reply at 2.) In recognition of "Defendant Spear's commitment" to "suspend marketing, sales and shipment activities for the duration of the stay," this Court ordered the case stayed for two weeks. (5/1/08 Order at 1.)

On May 14, 2008, the FDA – not Valeant – asked for another stay because it had "not yet reached final determination concerning the previously identified administrative record issue." (FDA Stay Brief II at 1.) The FDA also entered an administrative stay of its approval of Spear's ANDA, which effectively prohibited all "[m]arketing, sales, and shipment under ANDA 77-524." (Record at 1087.) This Court ordered the case stayed until May 30, 2008, and further ordered that the

1  FDA's suspension of Spear's ANDA remain in effect until June 1, 2008.  (5/16/08
2  Order.)
3      In summary, from April 30 until May 14, in response to the <u>FDA's</u> request,
4  Spear <u>voluntarily</u> chose not to fill orders for its 5-fluorouracil cream product.  And
5  from May 14 until June 1, Spear was prohibited from filling any orders for its
6  product because <u>the FDA had suspended its approval</u> of Spear's ANDA, and Spear
7  voluntarily consented to such suspension.  Thus, it is undisputed that any restrictions
8  on sales of Spear's product that occurred between April 30, 2008 and June 1, 2008
9  arose at the request of the FDA and Spear, not as a result of the TRO.  Spear's
10 omission of these facts from its motion is misleading to say the least.

11 **IV.   According to Spear's Own Declaration, the Revenues It Supposedly Lost**
12 **During the TRO Period Were Less than [REDACTED]**

13     Spear, relying only on the self-serving declaration of its Senior Vice President,
14 Stephen Basile (the "Basile Declaration"), claims it is entitled to the full amount of
15 the $1 million TRO bond.  But Spear's analysis and evidence fail to support
16 anything even remotely close to this claim.  Indeed, if anything, the Basile
17 Declaration proves that Spear is dramatically exaggerating its purported damages.

18     **A.   The Basile Declaration Establishes that Nearly All of Spear's**
19         **Claimed Damages Were Incurred Before the TRO**

20     Spear's motion rests almost entirely on Mr. Basile's testimony that "Reorders
21 as of June 18, 2008 totaled over [REDACTED]."  (Basile Decl. ¶ 4.)  This statement
22 is based on Exhibit 2 to the Basile Declaration, which Spear describes as a tally of
23 orders recorded by Spear's computer system as of June 18, 2008.  (Basile Decl. ¶ 3.)
24 According to Spear, this compilation alone proves the TRO caused Spear $1 million
25 in damages.  (Spear's Memo., p. 3.)  In fact, these computer records completely
26 undermine Spear's damages claim.
27     As discussed above, Spear made no sales between April 30 and June 1
28 because of (1) its <u>voluntary</u> agreement not to sell any product between April 30 and

-5-

1  May 14, and (2) the <u>FDA's subsequent two-week suspension</u> of its approval of
2  Spear's ANDA.  Thus, the TRO did not bar Spear from filling the orders placed
3  between April 30 and June 1, and any such orders cannot be chargeable against
4  Valeant's surety bond.  When Spear's claimed amount is adjusted to take this into
5  account, the universe of Spear's potential damages shrinks spectacularly.

6  According to Spear's computer records (Basile Declaration, Exhibit 2 ),
7  Spear's customers placed [REDACTED] of the total amount of reorders
8  ([REDACTED]) <u>before the TRO ever went into effect</u> (*i.e.*, from April 30 to June 1).
9  <u>Only [REDACTED] in reorders were placed during the TRO period</u> (June 2 to June
10 18).  This means that if this Court were ever to find Spear was wrongfully enjoined
11 (a determination that cannot be made until summary judgment or trial), the most
12 Spear could possibly be entitled to recover from the bond is any provable lost profits
13 attributable to the [REDACTED] in reorders during the TRO period.[2]

14 Furthermore, Mr. Basile's assertion about reorders provides no indication
15 about whether the alleged reorders were made to satisfy <u>existing</u> demand, or in
16 anticipation of <u>future</u> demand.  If the reorders were intended to cover future demand,
17 then the fact that they were placed during the TRO period is merely a coincidence,
18 not evidence of damage.  In all likelihood, customers whose orders were not filled
19 during the TRO simply waited and placed their orders immediately after the TRO
20 was lifted (resulting in no lost sales for Spear).

21 **B.  Spear Could Not Have Suffered Actual Lost Sales Because there
22       Was a Large Inventory of Its Product in the Marketplace During
23       the TRO Period**

24 Spear has failed to prove that it suffered any actual lost sales of its product
25 during the TRO period.  According to the Basile Declaration, Spear flooded the
26 market with its product immediately upon learning of the FDA's approval of its

---

[2] Spear's submission contains no evidence of Spear's profit margins.  Accordingly, even if the Court finds that Spear has established lost sales during the TRO period, there is no certain amount upon which to base a payment from the bond.

-6-

1  ANDA; from April 11th to April 24th, Spear sold more than [REDACTED] worth
2  of product.  On June 18th, Valeant submitted market data to the Court showing the
3  actual number of units of Spear product that were prescribed.  This market data
4  suggests that, as of the expiration of the TRO on June 18, wholesalers still had about
5  a seven-week supply of Spear's product in inventory, meaning any provider that
6  wanted to carry Spear's generic could still get the drug.  (*See* Valeant's Brief
7  Opposing An Additional Security Bond at 3-4, filed June 18, 2008.)  Based on this
8  evidence, Spear did not lose any sales during the TRO period.

**V.  Spear's Evidence of Lost Revenues Is Inadmissible, Speculative, and Unreliable**

Even if Spear were to properly limit its request to the actual TRO period, its proffered evidence of [REDACTED] in lost sales is inadmissible, speculative, and unreliable.

**A.  The Basile Declaration Concerning Lost Revenues Is Based Entirely on Inadmissible Speculation**

In addition to making the obvious error of failing to distinguish between orders placed before the TRO, and those made after the TRO was entered, the Basile Declaration contains numerous statements and conclusions that must be rejected on other grounds.  For example, Mr. Basile asserts that "[m]ost of the reorders were placed by customers who had run out of product."  (Basile Decl. ¶ 5.)  But Mr. Basile does not explain or support this statement, nor does he establish any personal knowledge of this alleged fact.  Given this lack of foundation, the statement is inadmissible and cannot be considered.  *See* Fed. R. Evid. 602. Mr. Basile also fails to quantify, even generally, the number of reorders placed by customers who had allegedly exhausted their supply.

Mr. Basile also asserts that the "number of reorders would have been much higher except for the fact that Spear's inability to fill reorders during the TRO period discouraged Spear's existing customers from placing additional orders."

-7-

(Basile Decl. ¶ 6.)  This statement is inadmissible and unreliable for at least three reasons.  First, Mr. Basile provides no foundation or basis for how he knows the state of mind of Spear's customers; his testimony is nothing but self-serving, inadmissible speculation.  *See* Fed. R. Evid. 602.  Second, Mr. Basile fails to account for the fact that Spear did not sell its generic product for a full month before the Court issued the TRO because of the FDA's and Spear's self-imposed restrictions.  It is just as likely, if not more likely, that it was Spear's refusal to fill orders <u>prior to the TRO</u> that "discouraged Spear's existing customers from placing additional orders."  Third, Mr. Basile fails to quantify, even generally, how much greater Spear's sales might have been but for the TRO.

The Basile Declaration also asserts that, "by June 20, 2008, Spear had shipped product to at least one additional new customer." (Basile Decl. ¶ 9.)  Putting aside Spear's failure to explain how or why this new customer evidences lost sales during the TRO, Mr. Basile fails to identify the customer or the amount of the order, making the statement nothing more than an unverifiable assertion.

### B. Spear's Redaction of Customer Identification Information Raises Questions About Its Damages Claims

Spear redacted customer information from its sales and orders reports.  In so doing, Spear has made it impossible for the Court or Valeant to verify its claims.  For example, by not disclosing which customers placed reorders, Valeant cannot determine whether any customers who placed reorders during the TRO period also placed orders immediately before TRO went into effect.  This is significant, because it is possible that reorders placed during the TRO period would not have been made had Spear been selling its product before the TRO went into effect.  But for Spear's self-imposed stay and the FDA-mandated stay, many of Spear's customers may have been able to fill their orders prior to the TRO going into effect.

### VI. <u>Spear Is Not a Legitimate Beneficiary of the TRO Bond</u>

-8-

\\\LA - 086689/000040 - 395428 v1

1    Despite the fact that Spear requested and obtained security in connection with
2    this Court's TRO grant, neither the Federal Rules nor the case law supports Spear's
3    entitlement to a bond. Entitlement to a bond is limited to the party being directly
4    enjoined. Parties that are affected by an injunction only collaterally, such as Spear,
5    are not so entitled. Rule 65(c) provides that an injunction bond is applicable only to
6    "costs and damages as may be incurred by any party who is found to have been
7    wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The TRO entered by this
8    Court did not restrain Spear in any way. The Order was directed only at the FDA:

> "Defendants Michael O. Leavitt, Andrew C. von Eschenbach, and their agents, servants, employees, successors, assigns, and all those in active concert or participation with them, shall be and hereby are compelled to suspend approval of the Abbreviated New Drug Application ('ANDA') No. 77-524 for a generic version of Efudex® (fluorouracil) Cream."

13   (5/31/08 TRO at ¶ 1.)

14   The TRO did have an indirect impact on Spear, in that Spear could not
15   continue to distribute its generic product in the absence of an approved ANDA. But
16   this indirect effect does not entitle Spear to bond relief. For example, in *Ohio
17   Asphalt Paving, Inc. v. Board of Com'rs of Coshocton Count.,* No. 2:05-CV-0336,
18   2005 WL 1421952 (S.D. Ohio June 17, 2005), the plaintiff paving contractor
19   obtained a TRO enjoining the county from executing a paving contract with a third
20   party, Apache Aggregate and Paving Co. The TRO thus had a collateral effect on
21   Apache by canceling its contract with the county. Nevertheless, the court refused to
22   order the posting of a bond for the benefit of Apache, pointing out that "[a]lthough
23   the preliminary injunction affects Apache, Apache has not been enjoined." *Id.*, 2005
24   WL 1865393, *2 (S.D. Ohio Aug. 4, 2005).

25   Similarly, in *Equipment & Sys. For Indus., Inc. v. Zevetchin*, 864 F. Supp.
26   253 (D. Mass. 1994), the plaintiff obtained an injunction barring two of its former
27   employees from engaging in certain business on behalf of their new employer.
28   Although the injunction reduced revenues of the new employer indirectly, the Court

-9-

refused to account for those losses when issuing the bond because that employer was "not an enjoined party [and, therefore, its] potential 'losses' are irrelevant." *Id.* at 255, 257-58.[3]

Here, Valeant did not sue to enjoin Spear, but to enjoin the FDA. To the extent that the TRO had a secondary effect on Spear, that effect is simply the result of enjoining the FDA's approval of Spear's ANDA. Accordingly, Spear is not entitled to execute on the bond.

## VII. Conclusion

The Court did not directly restrain Spear, and therefore Spear should not be able to recover on the bond. Even if Spear is found to be a legitimate beneficiary of the TRO bond, Spear's motion is premature, and its damages claims are massively overstated, speculative and unsupported. For these reasons, Valeant respectfully requests that the Court deny Spear's motion.

Dated: July 28, 2008          HOGAN & HARTSON LLP


By: /s/ David G. Chang
    Richard de Bodo
    J. Drew Diamond
    David G. Chang

    Attorneys for Plaintiff
    VALEANT PHARMACEUTICALS
    INTERNATIONAL

---

[3] *See also*, *G.B.C., Inc. v. United States*, 302 F. Supp. 1283, 1285 (E.D. Tenn. 1969) (because preliminary injunction was issued against Interstate Commerce Commission, "[w]hatever harm [certain] carriers may sustain as a result of this order is irrelevant to the security amount, required by Rule 65(c)"); *Powelton Civic Home Owners Ass'n v. Dep't of Hous. & Urban Dev.*, 284 F. Supp. 809, 815 (E.D. Pa. 1968) ("The Redevelopment Authority may or may not suffer financial loss if the federal funds here have been wrongfully enjoined [but it] is clear that the Redevelopment Authority has not been enjoined by this Court; thus it cannot have been wrongfully enjoined; and therefore it is not entitled to demand security"); *Sys. Operations, Inc. v. Scientific Games Dev., Corp.*, 555 F.2d 1131, 1145 (3d Cir. 1977) ("*Powelton* holds that a party who has not been enjoined has no right to demand that another party post a security bond.").

-10-

\\\LA - 086689/000040 - 395428 v1