UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALEANT PHARMACEUTICALS INTERNATIONAL,<br><br>        Plaintiff,<br><br>   v.<br><br>KATHLEEN SEBELIUS; JOSHUA M. SHARFSTEIN, M.D.,<br><br>        Defendants.<br><br>and<br><br>SPEAR PHARMACEUTICALS, INC.,<br><br>        Intervenor-Defendant. | CASE NO. SACV 08-0449 AG (AGRx)<br><br>ORDER GRANTING SPEAR PHARMACEUTICALS' MOTION FOR EXECUTION OF BOND |

Before the Court is the Motion of Intervenor Defendant Spear Pharmaceuticals, Inc. ("Spear") for Execution on Bond ("Motion"). After considering all arguments presented by the parties, the Motion is GRANTED.

**BACKGROUND**

Plaintiff Valeant Pharmaceuticals International ("Valeant") is a pharmaceutical company that manufactures and markets Efudex® Cream. Spear is a pharmaceutical company that has obtained permission from the Food and Drug Administration ("FDA") to manufacture and market a generic version of Efudex® Cream. Spear began selling its generic cream on April 11, 2008. Valeant filed this lawsuit seeking to set aside the FDA's approval of Spear's generic drug on April 25, 2008.

After the suit was filed, Spear voluntarily consented to suspend sales of the generic cream from April 30, 2008 to June 1, 2008. Before Spear resumed sales, Valeant applied for a temporary restraining order ("TRO") to suspend the FDA's approval of Spear's generic drug. On June 2, 2008, the Court issued the TRO. The Court also ordered a bond, and American Contractors Indemnity Company ("American Contractors Indemnity") filed an Undertaking and Surety Rider for the TRO for $1,000,000. On June 16, 2008, the Court extinguished the TRO and denied Valeant's motion for a preliminary injunction.

After the Court denied the motion for a preliminary injunction, Spear moved to execute the bond. The Court denied the motion because Spear had not yet prevailed on the underlying litigation.

On September 14, 2009, the Court issued an order granting the motions for summary judgment of Spear and the FDA and denying the motion for summary judgment of Valeant. ("September 14, 2009 Order".) Final judgment was entered in favor of Spear and the FDA on October 1, 2009. Spear now seeks to execute the bond. Valeant filed a notice of appeal on the same day it filed its opposition to this Motion.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 65(c), a court may issue a TRO "only if the movant gives security in an amount that the court considers proper to pay the costs and damages

sustained by any party found to have been wrongfully enjoined or restrained." A court may execute the bond on a restraining order if it finds that "the enjoined or restrained party was 'wrongfully enjoined or restrained.'" *Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032 (9th Cir. 1994), *cert. denied*, 513 U.S. 822 (1994). "[A] party has been wrongfully enjoined within the meaning of Rule 65(c) when it turns out the party enjoined had the right all along to do what it was enjoined from doing." Id. at 1036.

If a court determines that the moving party was wrongfully enjoined or restrained, "there is a rebuttable presumption that [the moving party] is entitled to have the bond executed and recover provable damages up to the amount of the bond." *Id.* at 1036-37 (citing *Nat'l Kidney Patients Ass'n v. Sullivan*, 958 F.2d 1127, 1134 (D.C. Cir. 1992)). To prove damages, the moving party must establish by a preponderance of evidence that it has sustained actual injury as a result of being wrongfully enjoined or restrained. *Nintendo*, 16 F.3d at 1038.

**ANALYSIS**

    **1.**    **SPEAR WAS WRONGFULLY RESTRAINED**

The Court denied Valeant's motion for a preliminary injunction, granted Spear's motion for summary judgment, and denied Valeant's motion for summary judgment. Spear argues that these facts establish that Spear was wrongfully restrained because it "had the right all along to do what it was enjoined from doing." *Nintendo*, 16 F.3d at 1036. The Court agrees.

In the order granting summary judgment, the Court found that the FDA's actions in allowing Spear to market the generic version of Efudex® Cream "were not "arbitrary, capricious, an abuse of discretion or otherwise contrary to law' under the Administrative Procedures Act." (September 14, 2009 Order 8:24-25.) This finding meant that the FDA did not err in approving the generic version of the cream, so Spear "had the right all along" to market and sell the cream. *Nintendo*, 16 F.3d at 1036. Final judgment was entered in favor of Spear. No issues remain for this Court to decide in the underlying litigation.

Valeant argues that because it has filed an appeal in this case, this Motion is premature. Valeant cites *Nintendo* for the premise that if it "prevails on its appeal, Spear will not have been wrongfully enjoined." (Opp'n 3:22-25.) Specifically, Valeant asks the Court to stay execution of bond proceedings based on the following passage from Nintendo:

> Here, Nintendo obtained a preliminary injunction enjoining Galoob from selling the Game Genie. As it turned out, Galoob prevailed in the underlying litigation. The district court held Galoob could sell the Game Genie and vacated the preliminary injunction. We affirmed on appeal. [citation]. Thus, Galoob was wrongfully enjoined.

*Id*. at 1036. The Court is not convinced that this passage means that a district court should stay an execution of bond pending appeal. In Nintendo, the district court granted the execution of the bond before the Ninth Circuit affirmed the judgment on the merits. *Id.* at 1034- 35. There is no indication in the Nintendo opinion that the Ninth Circuit found the execution of the bond before the appeal on the merits to be premature, *id*., and the Court finds no reason to create a new precedent here.

Tellingly, in Spear's first attempt at execution of the bond, Valeant itself asserted that "[o]nly if Spear wins on summary judgment or at trial, may it bring this motion." (Valeant's Opp'n to Spear's July 27 Motion 1:11-12.) Spear won on summary judgment. It now brings this Motion.

Because the Court found in its September 14, 2009 Order that FDA did not err in permitting Spear to market the cream, and because final judgment was entered in this case, the Court finds that Spear was wrongfully restrained.

4

## 2. SPEAR IS ENTITLED TO EXECUTION OF THE BOND

Because the Court finds that Spear was wrongfully restrained, "there is a rebuttable presumption" that Spear is "entitled to have the bond executed and recover provable damages up to the amount of the bond." *Nintendo*, 16 F. 3d at 1036-37. "By adhering to this standard, the party enjoined will usually recover damages, thus discouraging parties from requesting injunctions based on tenuous legal grounds." Id. at 1037 (citing *Coyne-Delaney Co. v. Capital Dev. Bd.*, 717 F.2d 385, 392 (7th Cir. 1983)). Although Valeant argues that Spear cannot prove the damages Spear asserts, Valeant makes no attempt at rebutting the presumption that Spear is entitled to have the bond executed. Accordingly, the Court GRANTS Spear's Motion to execute the bond. The only remaining issue is the calculation of damages.

## 3. DAMAGES

The moving party has the burden of proving by a preponderance of the evidence that it sustained actual damages as a result of being wrongfully restrained. *Nintendo*, 16 F.3d at 1038. The amount of damages must be proven to a reasonable certainty. *Id.* (citing *Palmer v. Connecticut Ry. & Lighting Co.*, 311 U.S. 544, 561 (1941) ("Certainty in the fact of damage is essential."); see also *Sionix Corp. v. Moorehead*, 299 F. Supp. 2d 1082, 1088-89 (S.D. Cal. 2003). A determination of damages based on a "rational and reliable" estimate will be upheld. *Nintendo*, 16 F.3d at 1038 (finding that the district court did not clearly err in making a finding of damages initially based on a "'rational and reliable' estimate" of the moving party's economist and reduced based on evidence and contentions of the parties).

Here, Spear has met its burden of proving by a preponderance of evidence that it sustained actual damages as a result of the TRO. In its moving papers, Spear submitted a declaration of its accounting expert, Roy Weinstein ("Weinstein"), who calculated that Spear lost between $927,000 and $1.1 million in sales during the TRO period. (Weinstein Decl. ¶¶ 7-10.) These estimates are based on sales data before and after the restraining order. (Id.)

Valeant argues that Spear's damages were completely mitigated because sales were extremely high the day after the TRO was lifted. (Opp'n 11:14-12:15.) Sales that day were about $1.2 million, which is 15 times the average daily sales calculated by Weinstein. (Opp'n 11:19-21.) Valeant's argument is misleading. In Weinstein's calculations of average sales, he deducts $782,268 from the total amounts to account for orders placed during the voluntary suspension, but filled on the day the TRO was lifted. (Weinstein Decl. ¶¶ 7-10.) If that $782,268 is deducted from the $1.2 million in sales on the day after the TRO, then the remaining sales total about $420,000. Although this is still about six times higher than the average day, it is not high enough to negate the 13 business days worth of lost sales during the TRO period. The Court finds that even if some damages were mitigated the day after the TRO was lifted, Spear has proved by a preponderance of evidence that it suffered actual damages.

The next issue is the calculation of those damages. Weinstein offers three methods of calculating the damages. The first method is based on the total average daily sales for the year after the TRO was lifted. (Weinstein Decl. ¶ 8, Exh. 3.) The second method is based on the total average daily sales from the product launch through June 2009. (Weinstein Decl. ¶ 9, Exh. 4.) The third and final method is based on average daily sales for the 13 business days after the TRO was lifted. (Weinstein Decl. ¶ 8, Exh. 5.) In all three methods, Weinstein deducted the value of the orders received during Spear's voluntary suspension of sales before calculating the daily average. (Weinstein Decl. ¶ 8-10, Exhs. 3-5.) The results of each of the calculations is based on the 13 business days that the TRO was in place. (Weinstein Decl. ¶¶ 8-10, Exhs. 3-5.)

Valeant argues that Weinstein had no basis for calculating damages during the TRO period on the daily sales averages for other periods because "[h]e provides no expertise whosover [sic], and does not even attempt to explain the methodology he purports to use or why he made any of the choices he made in doing the calculations set forth in the declaration." (Opp'n 6:1-4.) The Court disagrees. Valeant's assertion that Weinstein "provides no expertise" is unfounded. Weinstein is well qualified to testify on accounting methods and practices. He has more than 40 years experience in, among other things, industrial organization, statistics and econometrics, valuation of intellectual property, and calculation of economic damages.

(Weinstein Decl. ¶ 1.) His resume includes a dozen publications and 26 speaking engagements at various bar association events. (Weinstein Decl., Exh. 1.) He has testified as an expert in 188 cases. (Weinstein Decl., Exh. 2.) The Court finds that there is foundation for Weinstein's expert testimony.

Valeant also argues that there is no support in the Weinstein declaration for using average daily sales as the basis for damages because unfilled orders during the TRO period totaled only $125,000. (Basile Decl. Supporting Spear's July 27 Motion, Exh. 2.) Again, the Court disagrees. During the TRO period, Spear was enjoined from not only from selling, but also from marketing the generic cream. Spear's cream had launched only a few months before the TRO, and Spear's marketing and sales teams were stalled completely during the TRO. (Basile Decl. supporting this Motion ("Basile Decl.") ¶¶ 3-4.) The unfilled orders during the TRO period were re-orders from existing customers, not orders from new accounts. (Basile Decl. ¶ 3.) Further, Valeant does not offer any expert testimony refuting the methods used by Weinstein, nor does Valeant offer expert testimony as to alternative methods of calculation. The Court finds that these facts form a sufficient basis for Weinstein's use of average daily sales as the baseline for damages.

Next, Valeant argues that Spear's calculation of damages is wrong because it does not explain which of the three methods is better or more reliable, but instead averages the result of all three methods, then applies its profit margin, as well as interest. The Court agrees that there is no basis for averaging the three methods rather than picking the most reliable. In Valeant's Opposition, it argues that the first two methods are unreliable because they fail to account for seasonal sales and an upward trend. Valeant also opposes the use of the second method because it includes the launch date, when Spear's sales totaled $2.2 million in one day, which was more than some months worth of sales. The Court finds that the most reliable method is a slightly modified version of Weinstein's third method.

In the third method, Weinstein added the total sales from the 13 business days after the TRO was lifted for a total of $1,895,962. This time period ran from June 19, 2009 to July 8, 2009. He then subtracted $782,268 from the total to account for unfilled orders from Spear's

voluntary suspension of sales, for a total of $1,113,694 in sales for the 13 business day period. The problem with this calculation is that including the days immediately after the TRO was lifted skews the average daily rate. Even after deducting the unfilled orders from Spear's voluntary suspension, the average sales during the two days after the TRO was lifted were exceedingly higher than the average of the sales over the next two weeks.

The Court finds that a better measure would be to use the total sales for the 13 business days beginning the Monday after the TRO was lifted so that the anomalous first two days are not included in the average. This time period runs from June 23, 2008 to July 10, 2008. The total sales during this period were $573,423, or an average of about $44,100 per day. (*See* Weinstein Decl., Exh. 6, Daily Sales Totals.) Thus, it is reasonably certain that Spear would have at least $573,423 in sales during the 13-business day TRO period. Because the damages were mitigated to the extent that orders taken during the TRO were filled when the TRO was lifted, the Court then deducts $125,000. (Basile Decl. Supporting Spear's July 27 Motion, Exh. 2.) So, it is reasonably certain that the total in unmitigated sales for the TRO period would have been $448,423.

The calculation does not stop here. Next, the Court must determine what Spear's net profit would be on the $448,423 in sales. Spear asserts that its profit margin is 91%. (Spear Decl. ¶ 2.) This profit margin includes rebates, cash discounts, cost of goods sold, and distribution costs. (*Id.*) Valeant does not argue that 91% is an unreasonable profit margin for the cream. Accordingly, the Court uses 91% as the expected net profit, and the total losses were $408,065.

Finally, Spears is also entitled to interest on its lost profits. *Nintendo*, 16 F.3d at 1035-36. By applying the Federal Reserve interest rate under 28 U.S.C. § 1961 that applies to money judgments in civil cases (0.40%) to the number of days that have passed since the TRO was extinguished (607), the Court determines that the total interest is $2,715. This interest brings the total to $410,779.

In sum, the Court finds that Weinstein's third method formed a rational and reliable starting point for the calculation of lost profits. After adjusting the calculations to account for

the anomalous days immediately after the TRO was lifted and the mitigation of damages, the Court finds that damages in the amount of $410,779 are reasonably certain in this case.

**DISPOSITION**

     Spear's Motion for Execution on the Bond is GRANTED.  Spear can recover $410,779 from American Contractors Indemnity.  American Contractors Indemnity is fully discharged from its liability on the bond after payment of that amount to Spear.

IT IS SO ORDERED.

DATED: March 12, 2010

_____
Andrew J. Guilford
United States District Judge